McCLAVE v. TEXAS CO.

(Supreme Court, Appellate Division, First Department. February 6, 1914.)

BROKERS (§ 86*)—ACTIONS FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.
  Evidence, in an action for commissions for procuring the sale of oil, *held* to show that plaintiff did not personally make the contract of sale on which a commission is claimed, or directly or indirectly procure the sale.

  [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

Appeal from Trial Term, New York County.

Action by John McClave against the Texas Company. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted, unless plaintiff accepts a reduced amount, in which event judgment for that amount is affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Emory R. Buckner, of New York City, for appellant.
Armin Kohn, of Flushing, for respondent.

LAUGHLIN, J. This is an action for commissions alleged to have been earned by the plaintiff under an oral contract made on the 22d day of January, 1912, by which he was employed to sell oil on a commission basis of one-quarter of a cent per gallon on fuel and kerosene oil and 15 per cent. of the selling price on all orders for lubricating oil, and for damages for a breach of the contract. By his complaint the plaintiff claimed commissions on the sale of lubricating oil amounting to $79.50; but on the trial he said that he would be satisfied with $13.38 on his commissions on that item. He also alleged that he sold under the contract 30,000 gallons of kerosene, for which, however, he failed to demand commissions; but the evidence shows that only 10,600 gallons were sold, on which he would be entitled to a commission of $26.50, if he had demanded it, and, I think, the complaint should be deemed amended, as it is manifest that the demand was omitted through inadvertence. The plaintiff further alleged that under this employment he procured an order for the sale of 900,000 gallons of fuel oil, on which he claimed commissions of $2,250. He also alleged a loss of commissions aggregating $1,625, owing to the defendant having interfered, in violation of its contract, with negotiations pending between him and the New York Central Railroad Company for the sale of 400,000 gallons of kerosene oil, 200,000 gallons of gasoline oil, and 50,000 gallons of gas oil.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
  145 N.Y.S.—47

Appellant's contention on the trial was that plaintiff's authority to sell oil was limited to lubricating oil unless otherwise specially authorized. On that theory he was entitled to recover said $13.38; and, on a finding in his favor on conflicting evidence with respect to the terms of the contract, he was likewise entitled to recover the further sum of $26.50, making an aggregate sum of $39.88. The evidence showed that the sale which plaintiff alleged to have been 900,000 gallons was, in fact, 1,050,000 gallons to the New York Central Railroad Company. Commissions on that sale would amount to $2,625. The verdict was for $2,667.25, which, it will be seen, is $2.37 more than the amount of the commissions on the sale of 1,050,000 gallons of oil and the said $39.88. It is quite probable, I think, that the jury disallowed the plaintiff's claim for $1,625 damages for interfering with his negotiations with the railroad company, and that they attempted to award the proper amount for the other items. Whether this be so or not, it is quite clear, I think, that the plaintiff was not entitled to recover any damages for the alleged interference with his negotiations for a sale to the railroad company. That claim is based upon an agreement which he testified was made at the time he was employed by defendant, to the effect that the defendant would not hinder or interfere with his efforts to sell oil, or send any other representative to "any of the plaintiff's known customers." The basis of his claim in the first instance is that the railroad company was his customer. I think that he failed to establish that fact. But, in any event, he failed to show any damages through the alleged interference, which, according to hearsay evidence which plaintiff was permitted to give, consisted of an effort by the defendant's superintendent of sales to sell oil to the railroad company at a lower price than that at which he was negotiating. There was no competent evidence of this, and it was denied by the superintendent of sales and by the representative of the railroad company. Moreover, neither did the negotiations of the plaintiff result in a sale, nor did the defendant make any sale at that time, to the railroad company. The record is barren of any evidence legitimately tending to show that the negotiations between the plaintiff and the railroad company had resulted in an agreement, or that the plaintiff could have made the sale. The plaintiff alleged in his complaint that he procured this order, and that it was canceled through the interference of the defendant. On the trial, however, he admitted that this allegation was incorrect, and he was permitted to amend his complaint to the effect that the negotiations for a sale were interfered with. Upon neither theory, however, did the evidence present a question of fact for the jury.

The plaintiff did not actually negotiate the sale of the 1,050,000 gallons of fuel oil to the railroad company for which he claimed commissions. The evidence on which plaintiff bases his claim to commissions on that sale consists of his own testimony, to the effect that he called on one Snyder, who at the time was assistant to the purchasing agent of the New York Central Railroad Company, and who was a personal friend of his; that he asked Snyder if he "ever had a representative of the Texas Company call upon you?" and, on re-

ceiving a reply in the negative, he said to Snyder, "I am a representative of the Texas Company at the present time, and any inquiries for oil of any description, if you have it, I would like to have you send them down," to which Snyder replied "I would be very glad to;" that a week or 10 days later he called on Snyder again, and the latter informed him that he had sent a written inquiry for about 900,000 gallons of fuel oil to defendant, to which he received no response, and that he subsequently called defendant's office on the telephone, and was informed that the prices would have to come through one Jordan in the railroad department of defendant at Chicago, but that he finally got the prices by telephoning to Buffalo and having the representative of the railroad in Buffalo telephone Chicago, and that Snyder said to him, "I sent you down that order." Snyder was called as a witness for the defendant. He testified that he told plaintiff that defendant was on the railroad company's list of those to whom regular monthly inquiries were sent, and "got our inquiries," and he denied substantially all the plaintiff's testimony with respect to the second interview with him, and testified, in effect, that he had nothing to do with the order for 1,050,000 gallons, and that the order therefor was placed by his superior, one Bower, and he was not able to say whether it was placed before or after plaintiff's first visit. Bower testified that he placed the order and attempted to get prices from defendant's New York office first, but was referred to the Chicago office, and closed the deal on the price received over the telephone from Chicago, and that up to that time he had never heard of plaintiff. It thus appears that the plaintiff neither personally negotiated that contract, nor directly or indirectly procured it from the railroad company. If it were true that, following his interview with Snyder, the latter attempted to get quotations at the defendant's office, and then obtained them and made the contract through the Chicago office, there might be some basis for plaintiff's claim, but there is no competent evidence of those facts. There is merely plaintiff's testimony as to what Snyder told him, which is not proof of the facts. The right of plaintiff to recover commissions on this sale is further based on his testimony to the effect that when he was employed by the defendant he was informed that the defendant had had some inquiry for quotations from the New York Central Railroad Company but had done no business with it, and that it was suggested that he endeavor to obtain orders from that company, and that it was agreed, in substance, that the defendant would not interfere with any of his negotiations, or endeavor through others to obtain orders from any of his customers. Plaintiff testified, in answer to leading questions on cross-examination—evidently put to ridicule his claim by exaggerating it—with respect to his understanding as to the effect of the contract rather than with respect to the facts, that he understood that he was to receive commissions on any sales made to the New York Central Railroad Company, and other railroads mentioned in the interview at which he was employed, and that any inquiries made by those railroads for prices were to be referred to him, and that if sales resulted therefrom, he was to receive commissions. That, however, is not the legal effect of the contract

made between him and the defendant as narrated by him. The most favorable view of the contract is that he was given the exclusive right to negotiate sales to the railroad companies, and that he was entitled to commissions procured through his efforts. But that would not entitle him to commissions on the order on which he claims commissions, the giving of which he in no manner influenced.

If the defendant had stipulated on the trial that plaintiff was entitled to recover the sum of $39.88, and had consented to a direction of a verdict for that amount, and by proper exceptions had challenged the right of the plaintiff to recover more, we could, pursuant to the provisions of section 1317 of the Code of Civil Procedure, grant final judgment on the exceptions, but in the circumstances it is necessary to order a new trial, unless the plaintiff stipulates to reduce the recovery to $39.88.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event, unless plaintiff stipulates to reduce the recovery to $39.88, in which event the judgment is reduced to $39.88, and as so reduced is affirmed, with costs to appellant. All concur.